IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

SHURON MAURICE BARKSDALE,        )
      Petitioner,               )      Civil Action No. 7:23-cv-00087
                        )
v.                         )
                        )      By: Elizabeth K. Dillon
HAROLD CLARKE,              )         United States District Judge
      Respondent.           )

**MEMORANDUM OPINION**

Shuron Maurice Barksdale filed this petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging his 2018 conviction and eighty-year prison sentence for drug distribution. (Habeas Pet., Dkt. No. 1.)  Before the court is the respondent's motion to dismiss.  (Dkt. No. 6.) For the reasons stated below, this motion will be granted.

## I.  BACKGROUND

On November 19, 2018, following a bench trial, petitioner was convicted on two counts of Possession with Intent to Distribute a Schedule I Drug (Heroin).  (Resp't's Ex. 1 at 132–33, Dkt. No. 8-6.)  The trial court sentenced Barksdale to a total of eighty years in prison, with sixty years suspended, resulting in an active sentence of twenty years.  (*Id.* at 487–89.)

Petitioner appealed his convictions to the Court of Appeals of Virginia, which denied his petition for appeal in orders dated August 15 and October 30, 2019.  (Resp't's Ex. A at 54–67, Dkt. No. 8-1.)  The Supreme Court of Virginia refused his petition for appeal on August 26, 2020.  (*Id.* at 71.)

Barksdale filed a petition for a writ of habeas corpus in the Supreme Court of Virginia on August 24, 2021.  (Resp't's Ex. C2 at 2, Dkt. No. 8-5.)  The petition was denied on August 5, 2022.  (Resp't's Ex. C3, Dkt. No. 8-8.)

## II.  ANALYSIS

### A.  Petitioner's Claims

Petitioner alleges the following claims: (1) the trial court erred in its evidentiary ruling with regard to the drugs at Barksdale's trial; (2) the evidence was insufficient to establish Barksdale possessed a schedule I or II drug with the intent to distribute; (3) the trial court erred in sentencing Barksdale to an active sentence of 20 years; (4) trial counsel was ineffective for failing to challenge the "chain of custody" for the drugs at Barksdale's trial; and (5) trial counsel was ineffective for failing to object to the certificates of analysis as no forensic examiner testified to the contents of those certificates.  (*See* Habeas Pet.)

### B.  Timeliness

Respondent first argues that this action is untimely.  Section 2254 petitions are subject to a one-year statute of limitations, running from the latest of four commencement dates enumerated in 28 U.S.C. § 2244(d)(1), which in this instance is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," § 2244(d)(1)(A).  Respondent argues that the petition is untimely by seven days, based on the reasoning that the limitations period began to run on November 24, 2020, the date upon which petitioner's time to seek a writ of certiorari with the United States Supreme Court expired—90 days after the Supreme Court of Virginia refused Barksdale's petition for appeal on August 26, 2020.

This argument fails to account for the Supreme Court order extending the 90-day timeframe to 150 days during the COVID-19 pandemic, from March 19, 2020, through July 19, 2021.  *See* Order of the United States Supreme Court of July 19, 2021, rescinding prior order of

2

March 19, 2020.[1]  The March 19, 2020 order, now rescinded, provided that "the deadline to file

any petition for a writ of certiorari *due on or after the date of this order* is extended to 150 days

from the date of the lower court judgment, order denying discretionary review, or order denying

a timely petition for rehearing."  *See* Order of the Supreme Court of March 19, 2020 (now

rescinded) (emphasis added).[2]  Because Barksdale's petition for a writ of certiorari was due after

March 19, 2020, based on a judgment or order entered prior to July 19, 2021,[3] the limitations

period for Barksdale's petition began to run 60 days later than contemplated by respondent's

argument.  Therefore, the court finds that the instant petition is timely filed.

## C.  Exhaustion and Procedural Default

A state prisoner must exhaust his remedies in state court before seeking habeas corpus

relief in federal court.  28 U.S.C. § 2254(b).  A federal court "may not grant a writ of habeas

corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies

by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th

Cir. 2000).  Further, the petitioner must present to the state court the same operative facts and the

same controlling legal principles that he seeks to present to the federal court. *Duncan v. Henry*,

513 U.S. 364, 365–66 (1995); *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002).  Failure

to do so "deprive[s] the state court of an opportunity to address those claims in the first

instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  A petitioner must also present his

federal claims to the appropriate state court in the manner required by the state court, so as to

---

[1]  *See* https://www.supremecourt.gov/orders/courtorders/071921zr_4g15.pdf.

[2]  *See* https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf.

[3]  The July 19, 2021 order provides that "in any case in which the relevant lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing was issued prior to July 19, 2021, the deadline to file a petition for a writ of certiorari remains extended to 150 days from the date of that judgment or order."

give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986).  A state prisoner does not "fairly present" a claim for exhaustion purposes when the claim is raised in "a procedural context in which its merits will not be considered." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288; *see Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (describing the procedural default doctrine as a "distinct but related limit on the scope of federal habeas review").  Simultaneous exhaustion and procedural default occurs "when a habeas petitioner fails to exhaust available state remedies and 'the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"  *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 722).  In that case, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Baker*, 220 F.3d at 288.

The court finds that Barksdale properly exhausted all claims except the third claim, that the trial court erred in sentencing him to 20 years.  Barksdale raised this claim on direct appeal (*see* Resp't's Ex. 1 at 7), but then dropped the claim before the Supreme Court of Virginia (*see* Resp't's Ex. B1, Dkt. No. 8-2).  This claim is simultaneously exhausted and procedurally defaulted because it is now too late to bring it in state court. *See* Va. Code § 8.01-654(A)(2) (providing that a habeas corpus petition "shall be brought within one year after the cause of action accrues"); *Booker v. Dir. of the Dep't of Corr.*, 727 S.E.2d 650, 651 (Va. 2012) ("The

limitation period for habeas corpus petitions challenging revocation hearings is one year after the cause of action accrues," which is the date "the circuit court entered the order under which petitioner is currently detained"); *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006) (finding that Virginia Code § 8.01-654(A)(2) constituted an independent and adequate state law ground).[4]

However, Barksdale's remaining claims were properly exhausted either on direct appeal or in the habeas petition filed with the Supreme Court of Virginia. (*See* Resp't's Exs. B1, C2.) Therefore, the court will address the merits of these claims.

### D.  Merits Standard of Review

Pursuant to § 2254(d), "a petitioner is entitled to relief only if the state court adjudication of their claim was [1] 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court'; or [2] 'based on an unreasonable determination of the facts in light of the evidence presented.'" *Allen v. Stephan*, 42 F.4th 223, 246 (4th Cir. 2022) (quoting 28 U.S.C. § 2254(d)).  "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review to factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015).

"Clearly established Federal law" for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014).  "A state court's decision is 'contrary to' clearly established federal law under § 2254(d)(1) when it 'arrives at a conclusion opposite to that reached by [the Supreme

---

[4]  Even if this claim had been exhausted, it is not cognizable on federal habeas review.  *See Slavek v. Hinkle*, 359 F. Supp. 2d 473, 483–84 (E.D. Va. 2005) (explaining that a challenge to a sentence under Virginia's discretionary sentencing guidelines fails to implicate a federal right).

Court] on a question of law' or 'decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'"  *Allen*, 42 F.4th at 246 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)).  A state court's decision is an "unreasonable application" of clearly established federal law if the state court correctly identified the governing legal principle but "'unreasonably applie[d] that principle to the facts of the prisoner's case.'"  *Id.* (quoting *Williams*, 529 U.S. at 413).  This standard is meant to be "difficult to meet."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "'The ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice.'"  *Allen*, 42 F.4th at 246 (quoting *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017)).  The petitioner "must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.*

A state court's factual determinations, meanwhile, "are presumed correct, and the petitioner must rebut this presumption by clear and convincing evidence."  *Allen*, 42 F.4th at 246 (citing 28 U.S.C. § 2254(e)(1)).  A state court's decision is based on an "unreasonable determination of the facts in light of the evidence presented" under § 2254(d)(2) when it is "'sufficiently against the weight of the evidence that it is objectively unreasonable.'"  *Id.* (quoting *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010)).  "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'"  *Wood v. Allen*, 558 U.S. 290, 301 (2010) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part."  *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).  This is "especially so" when the state court

6

"resolved issues like witness credibility." *Id.* (quoting *Cagle v. Branker*, 520 F.3d 320, 324–25 (4th Cir. 2008)).  Credibility judgments may be overturned only when the error is "stark and clear." *Id.*

Even if a petitioner meets his burden under § 2254(d) and establishes the state court erred, "habeas relief will not be granted unless the error had substantial and injurious effect or influence in determining the jury's verdict" or there is at least "grave doubt as to the harmlessness" of the error.  *Allen*, 42 F.4th at 246–47 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), and *Fullwood v. Lee*, 290 F.3d 663, 679 (4th Cir. 2002) (internal quotation marks omitted)).

In determining whether the state court's decision is contrary to, or an unreasonable application of, clearly established federal law, the court looks to the last reasoned state court opinion.  *See Lewis v. Clarke*, Case No. 7:20CV00421, 2021 WL 1541034, at *5 (W.D. Va. Apr. 20, 2021) ("On habeas review, a federal court is to 'look through' the summary decision to the last court decision providing a rationale for the merits decision and to presume that the state high court adopted the same reasoning.") (citing *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)).  In this instance, the relevant opinions are the Court of Appeals of Virginia opinion denying Barksdale's petition for appeal (Resp't's Ex. A at 54–62) and the Supreme Court of Virginia order dismissing Barksdale's habeas petition (Resp't's Ex. C3).

### 1.  Evidentiary rulings with regards to drugs at trial (ground one)

In this claim, petitioner challenges the trial court's admission of heroin that an informant purchased from Barksdale during a controlled buy.  Evidentiary rulings are generally considered state law matters, and a "claim about the admissibility of evidence under state law rarely is a claim upon which federal habeas corpus relief can be granted." *Spencer v. Murray*, 5 F.3d 758,

763 (4th Cir. 1993). Evidentiary rulings will not be considered in federal habeas "unless the erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008). The only proper inquiry, if any, is whether the admission of the evidence itself so infected the entire trial that the resulting conviction violated due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Petitioner argues that the admission of the drugs in his trial that passed through "several hands leaving it to conjecture as to who had it and what was done with it between . . . taking it and analyzing it" was so extreme as to deny him due process. (Dkt. No. 15 at 4.) The Virginia Court of Appeals found that the trial court did not abuse its discretion in admitting the challenged evidence.

> South Boston Police Sergeant Van Aernem worked with the Halifax, South Boston Narcotics and Gang Task Force. On March 17, 2016, he participated in a controlled drug buy with confidential informant, Antonio Chambers. Appellant was the target of the operation. Before the buy, task force members searched Chambers for narcotics and cash. Chambers possessed $175 in cash which the task force kept during the buy operation. They gave Chambers $1,000 to buy the drugs. The task force rented two adjacent motel rooms, 147 and 148, with Room 147 being the location of the controlled buy. Before the controlled buy, task force members searched Room 147 for narcotics and weapons and set up surveillance equipment.

> Van Aernem testified that the drug buy occurred at 5:43 p.m., the task force entered Room 147 at 5:56 p.m., and Van Aernem collected the suspected heroin that Chambers had bought. Van Aernem could not recall where the heroin was located in the room when he collected it, but he stated that it was "loose" and was "on top of a digital scale." After the controlled buy, a task force member searched Chambers again and found no narcotics on his person.

Van Aernem placed the suspected heroin into an evidence bag, and he put the digital scale into a second evidence bag. He sealed the bag containing the suspected drugs, and "everyone signed off on it or initialed that it was sealed." Van Aernem kept possession of the bag of suspected heroin until he placed it into the temporary evidence locker at the police station on March 17, 2016. At trial, Van Aernem stated that Officer Carswell placed Commonwealth's Exhibit 1A into a second, "outermost" bag that Carswell believed was necessary because "the evidence [was] coming through the initial bag." When shown Commonwealth's Exhibit 1 at trial, Van Aernem stated that the "innermost packaging" of the evidence did not appear to have been altered. The May 3, 2016 certificate of analysis for Commonwealth's Exhibit 1A stated that the bag contained 8.3 grams of heroin.

South Boston Police Officer Carswell manages the evidence room for the police department. Carswell, Detective Red, and Captain Lovelace have access to the key that unlocks lockers where officers put the evidence that they have collected in cases. On March 18, 2016, Carswell obtained the key and removed from the temporary locker the two items that Van Aernem had submitted on March 17, 2016. Also on March 18, 2016, Carswell logged-in the two items of evidence in the main evidence room, and on March 23, 2018, he delivered the two items to the laboratory.

Carswell testified that when he first removed the evidence bag containing brown powder from the temporary locker, it "looked like the integrity of the bag was compromised." Carswell "sealed" the evidence "in a [second] plastic evidence bag that was clear so you could still see Van Aernem's writing on it, taped it up, and sealed it at the top." The second bag retained the substance that may have leaked from the original bag.

Carswell stated that when the evidence was returned by the laboratory after analysis, the evidence did not appear to be any different than when he submitted it to the laboratory for analysis. No one other than Carswell "checked out" the evidence after it was returned from the laboratory, and Carswell did not alter or tamper with the evidence after he checked it out to bring it to the trial.

At trial, appellant objected to the admission of Commonwealth's Exhibit 1A, the bag containing suspected heroin from the March 17, 2016 controlled buy, and Commonwealth's Exhibit 1C, the certificate of analysis for that evidence. He argued that when Van Aernem put the bag into the temporary locker it was "not leaking" and later "somehow the package was damaged and was leaking."

9

Appellant asserted that if the powder could spill out of the bag, then "something else could get" into the bag, and, thus, the bag was "compromised."

In making its ruling on the issue, the trial court noted that no witnesses had testified that anyone had tampered with the bag, added anything to the bag, or removed anything from it. The trial court observed that the substance inside the bag was a "very, very fine powder, among the finest powder that you would see." In addition, the trial court noted that the powder was coating the "inside of the bags," and the court found that "the problem" was not that something could get into the bag of powder, but that the powder was so fine "that perhaps the plastic bags they use may be porous enough that some [of the powder] gets out." The trial court concluded that the powdered heroin simply "migrate[d]" out of the sealed bags because the powder was so fine and overruled appellant's objection to the admission of Commonwealth's Exhibits 1A, 1B, and 1C.

Van Aernem testified that, at the scene on March 17, 2016, he put the loose heroin into an evidence bag and sealed the bag. Everyone from the task force who was present in the motel room initialed the evidence bag. Van Aernem maintained possession of the evidence bag until he placed it into a temporary evidence locker at the police station on March 17, 2016, the same date of the controlled buy. Van Aernem did not alter or tamper with the evidence after he sealed the bag. During the voir dire of Van Aernem by appellant's counsel, Van Aernem stated that the suspected heroin was not "coming out of the bag" when he put it into the temporary evidence locker. When asked by appellant's counsel if he knew how the evidence bag "eventually became compromised," Van Aernem testified, "I do not."

On March 18, 2016, Carswell obtained the locker key, removed the evidence from the temporary locker, and logged in the evidence in the main evidence room. When Carswell first removed the bag containing the heroin powder from the temporary locker, it appeared to him that "the integrity of the bag was compromised." Carswell then "sealed" the evidence "in a [second] plastic evidence bag that was clear so you could still see Van Aernem's writing on it, taped it up, and sealed it at the top." On March 23, 2018, Carswell delivered the evidence to the laboratory. When the evidence was returned by the laboratory after analysis, the evidence did not appear to be any different than when Carswell submitted the evidence to the laboratory for analysis. No one other than Carswell "checked out" the evidence after it was returned from the laboratory,

10

and Carswell did not alter or tamper with the evidence after he checked it out to bring it to the trial.

Here, the Commonwealth proved an unbroken chain of custody through the combined testimony of Van Aenem and Carswell. "All that is required . . . to establish a chain of custody is that the Commonwealth's evidence afford reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained." *Pope* [*v. Commonwealth*], 60 Va. App. [486,] 511 [2012]. Further, as the trial court found, the evidence showed only that the fine heroin powder was "migrating" out of the original evidence bag. No evidence indicated that anything went into the original evidence bag that would have constituted alteration or contamination of the evidence inside the bag. In addition, when he viewed Commonwealth's Exhibit 1 at trial, Van Aernem testified that the "innermost packaging" of Commonwealth's Exhibit 1A did not appear to have been altered.

(Resp't's Ex. A at 55–58.)  Thus, as there was an unbroken chain of custody established at trial, the admission of this evidence was not contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, the court will grant the motion to dismiss this claim.

## 2. Insufficient evidence (ground two)

In this claim, Barksdale alleges that the evidence was insufficient to convict him of possession of a scheduled substance with intent to distribute.  Sufficiency of the evidence to support a state court conviction beyond a reasonable doubt is a constitutional due process claim. *See Jackson v. Virginia*, 443 U.S. 307, 322 (1979).  The evidentiary standard for such a claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.  Since the enactment of § 2254(d), *Jackson* claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

First, it is the responsibility of the jury—not the habeas court—to decide what conclusions should be drawn from evidence admitted

11

> at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.  And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was objectively unreasonable.

*Id.* (citing *Cavazos v. Smith*, 565 U.S. 1 (2011)).  In other words, even when "reasonable minds reviewing the record might disagree" about the state courts' rulings on sufficiency, "on habeas review that does not suffice to supersede" those rulings under the deference demanded by § 2254(d).  *Rice v. Collins*, 546 U.S. 333, 341–42 (2006).  To grant relief on a § 2254 habeas claim that centers on factual issues, such as a sufficiency of the evidence challenge, "a federal habeas court must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Id.* at 339 (citing § 2254(d)(2)).  In making this determination under § 2254(d), the federal court may not "use a set of debatable inferences to set aside the conclusion reached by the state court."  *Id.* at 342.

The court of appeals addressed the evidence at trial as follows:

> On March 17, 2016, Investigator Michael McGregor, who worked with the task force, took surveillance video from outside of the motel showing that appellant entered and exited the motel room where Chambers was located.  McGregor stated that no one other than appellant entered or exited the motel room before appellant exited the room.  The video recorder located inside the motel room stopped recording before "the last few minutes" of the interaction between appellant and Chambers.
>
> Chambers testified that a member of the task force approached him about becoming an informant. Chambers had several pending charges for possession with intent to distribute marijuana and cocaine, third or subsequent offenses, and a pending probation violation for testing positive for using "marijuana, cocaine." Chambers also had a forty-two-year suspended sentence remaining in the probation violation case. Chambers hoped to get "[c]onsideration on [his] charges" for working with the task force, but he was promised nothing. Although Chambers agreed that he

12

would not use drugs while working with the task force, he admitted at trial that he continued to use marijuana and cocaine, but not heroin, during the time period that he worked as an informant. He also admitted that he sold cocaine during this time period. Chambers used Xanax and consumed alcohol while he was an informant. Chambers failed to maintain contact with his "assigned agent" until all of his court costs were paid, a condition that he had agreed to as an informant. He also missed two meetings with his probation officer while he worked as an informant. Chambers testified that he received no assistance from the Commonwealth with a 2016 probation violation sentencing proceeding.

Chambers testified that he was not using drugs on the dates of the two controlled buys involved in this case. On March 17, 2016, Chambers called appellant and arranged to buy heroin from appellant at the motel. Chambers stated that, prior to the transaction, members of the task force searched him and his bag and gave him cash. Chambers testified that appellant entered the motel room, they talked for a few minutes. Chambers told appellant what he wanted, appellant weighed it on the scale provided by the task force, they talked a few more minutes, then appellant left the motel room. Chambers stated that, as soon as appellant left the motel room, the task force members entered the room. Chambers did not alter or tamper with the heroin after appellant left the room and before the task force entered the room. Chambers did not know appellant before the controlled buys, and he had no reason to fabricate the assertion that he bought heroin from appellant other than to assist himself with his own charges. The video recording made from inside the motel room was played at trial.

On April 6, 2016, Chambers made another controlled drug buy from appellant. Task force members rented adjacent motel rooms and brought Chambers to the motel. Task force members searched the motel room and Chambers, set up the surveillance equipment, staged the room, and gave Chambers buy money. McGregor acknowledged that they did not conduct a strip search or body cavity search of Chambers, and he stated that they found no narcotics on Chambers. Appellant arrived at the motel room at 4:23 p.m., and he left the room at 4:46 p.m. When McGregor entered the motel room, Chambers showed him the suspected heroin for which he had paid $1,000. The heroin was in a bag located in the bathroom on the counter beside the sink. McGregor collected the heroin, put it into a bag, sealed the bag, and "everyone there" initialed the bag. Task force members again searched Chambers and the motel room and found no other drugs. McGregor kept the suspected heroin in his possession until he put the bag into a temporary evidence locker at

the police station on April 6, 2016. The certificate of analysis
showed that the bag contained 8.65 grams of heroin. Surveillance
videos from the motel room were admitted into evidence.

Chambers testified that he bought heroin from appellant on April 6,
2016, and his testimony corroborated McGregor's testimony
concerning the controlled buy. Chambers stated that after appellant
left the motel room, Chambers went into the bathroom to look at the
heroin, and he texted on his cell phone while he was in the bathroom.

Appellant argues that Chambers' testimony was incredible and that
the evidence did not prove that he committed the offenses. The trial
court explicitly stated that it accepted Chambers' trial testimony,
finding it "to be credible testimony from someone who certainly has
a lot of credibility problems in his background." Determining the
"credibility of the witnesses is a matter solely for the finder of fact,
who has the opportunity to observe the witnesses testify." *Severance
v. Commonwealth*, 67 Va. App. 629, 649 (2017), aff d, 295 Va. 564
(2018). "When 'credibility issues have been resolved by the [fact
finder] in favor of the Commonwealth, those findings will not be
disturbed on appeal unless plainly wrong.'" *Towler v.
Commonwealth,* 59 Va. App. 284, 291 (2011) (quoting *Corvin v.
Commonwealth*, 13 Va. App. 296, 299 (1991)). Furthermore, the
trial court found that the videos showed appellant in the motel rooms
with Chambers where they talked about "a brick," meaning heroin,
and appellant gave Chambers advice on where to sell the heroin. The
trial court also found that the testimony from the task force members
supported Chambers' testimony, and the court had "no doubt that
there were sales of heroin going on in" the motel rooms. The
evidence supports the trial court's findings. The trial court's
judgment "will not be set aside unless it appears from the evidence
that the judgment is plainly wrong or without evidence to support
it." *Epps v. Commonwealth*, 66 Va. App. 393, 402 (2016) (quoting
*Martin v. Commonwealth*, 4 Va. App. 438, 443 (1987)), *affd*, 293
Va. 403 (2017). The Commonwealth's evidence was competent,
was not inherently incredible, and was sufficient to prove beyond a
reasonable doubt that appellant was guilty of two counts of
possession with intent to distribute heroin.

(Resp't's Ex. A at 58–60.)  Barksdale argues that the evidence was insufficient to support a

conviction because the court was forced to believe the informant about any alleged transaction

between them.  (Dkt. No. 15 at 7.)  It cannot be said, however, that no rational trier of fact would

believe the confidential informant's testimony.  Accordingly, the rejection of this claim was not

14

contrary to or an unreasonable application of the *Jackson v. Virginia* standard.  The court will grant the motion to dismiss this claim.

### 3.  Ineffective assistance claims (grounds four and five)

When a state prisoner seeks § 2254 relief for ineffective assistance of counsel, courts apply the "highly deferential" *Strickland* standard.  *Owens v. Stirling*, 967 F.3d 396, 412 (4th Cir. 2020).  In *Strickland*, the Supreme Court set forth a two-part test to evaluate ineffective assistance of counsel claims.  First, the petitioner must show counsel's performance was deficient and fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687–88. Second, the petitioner must show prejudice, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Counsel gets the strong presumption that he or she rendered "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013).

"AEDPA and *Strickland* thus provide 'dual and overlapping' lenses of deference, which we apply 'simultaneously rather than sequentially.'"  *Owens*, 967 F.3d at 411.  "This double-deference standard effectively cabins our review to a determination of whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Morva v. Zook*, 821 F.3d 517, 528 (4th Cir. 2016).  "Section 2254(d) codifies the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.  Thus, surmounting *Strickland*'s high bar is never an easy task.  But establishing that a state court's application of *Strickland* was unreasonable under 2254(d) is all the more difficult."  *Valentino v. Clarke*, 972 F.3d 560, 580 (4th Cir. 2020)

15

(internal citations omitted).

First, Barksdale alleges that counsel was ineffective for failing to challenge the "chain of custody" for the drugs at his trial.  The state habeas court found that this claim satisfied "neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in [*Strickland*]." (Pet'r's Ex. C3 at 1.)  The court held that petitioner "fails to identify any evidence that counsel should have, but failed to, move to suppress or to articulate any issue related to the chain of custody of such evidence upon which counsel could have based the motion to suppress.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different."  (*Id.*)  This reasoning is not an unreasonable application of the *Strickland* standard.

Petitioner's second claim is that counsel was ineffective for failing to object to the certificates of analysis as no forensic examiner testified to the contents of those certificates.  The court rejected this claim as well, reasoning that:

> The record, including the trial transcript and the video and drug evidence introduced by the Commonwealth, demonstrates that a confidential informant bought heroin from petitioner during two controlled purchases in a hotel room.  After each purchase, a forensic scientist tested the substance and prepared a certificate of analysis confirming the substance was heroin.  The Commonwealth introduced both certificates at trial.  Petitioner appears to argue his counsel should have demanded the analysts testify.  However, petitioner has not proffered what the analysts' testimony would have been.  Further, petitioner fails to articulate how he was prejudiced by the lack of testimony from the analysts.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Ex. C3 at 2.)  Barksdale argues again that the analysts should have testified (Dkt. No. 15 at 8), but he has not specified or explained what that testimony would have entailed.  Thus, the

conclusion that petitioner did not establish prejudice was not contrary to or an unreasonable application of the *Strickland* standard.

Accordingly, the court will grant the motion to dismiss Barksdale's ineffective assistance claims.

### E.  Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" on a § 2254 petition.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a petition or claim is denied on procedural grounds, a petitioner meets the standard with a showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner has failed to make the requisite showing.  Therefore, the court declines to issue a certificate of appealability. However, Barksdale may still ask the United States Court of Appeals for the Fourth Circuit to issue such a certificate.  *See* Fed. R. App. P. 22(b).

### III.  CONCLUSION

For the reasons stated in the foregoing opinion, the court will issue an appropriate order granting respondent's motion to dismiss, denying Barksdale's § 2254 petition, and declining to issue a certificate of appealability.

Entered: March 4, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge